726 So.2d 640 (1998)
Alder Pearl BROOKS, By and Through Mildred VICKERS and Helen Jean Rhodes, her next friends; and Mildred Vickers and Helen Jean Rhodes, individually
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SYLACAUGA.
1961570.
Supreme Court of Alabama.
December 18, 1998.
*641 Thomas Reuben Bell, Sylacauga; James S. Hubbard, Anniston; and William Henry Agee, Anniston, for appellants.
Michael A. LeBrun of Potts & Young, L.L.P., Florence; and Steven D. Adcock, Talladega, for appellee.
LYONS, Justice.
Alder Pearl Brooks, Mildred Vickers, and Helen Jean Rhodes (together, "the Brookses") are plaintiffs in an action pending in the Talladega Circuit Court against First Federal Savings and Loan Association of Sylacauga ("First Federal"). We granted the Brookses permission, pursuant to Rule 5, Ala. R.App. P., to appeal from the trial court's order denying their motion in limine. We reverse and remand.
The Brookses' action was tried once before, and a jury found for the defendant, First Federal. The trial court entered a judgment in favor of First Federal on that verdict. However, the Court of Civil Appeals reversed that judgment in Brooks v. First Fed. Sav. & Loan Ass'n of Sylacauga, 679 So.2d 1148 (Ala.Civ.App.1996) ("Brooks I"), and remanded the cause for a new trial. In Brooks I, the Court of Civil Appeals set out the following pertinent facts:
"Alder Pearl Brooks and her daughters, Mildred Vickers and Helen Jean Rhodes (the Brookses), sued First Federal Savings & Loan Association of Sylacauga, alleging that it had acted wrongfully in allowing Pearl's husband, Louie Brooks, to transfer all the money from an account the two held jointly and deposit it into a separate account he held with his son. The complaint listed five counts against First Federal, including breach of contract, money had and received, fraudulent concealment, breach of fiduciary duty, and civil conspiracy.
"The Brookses allege that the account Pearl and Louie had together was a trust account for the benefit of her daughters. Because Pearl and Louie were co-trustees, they say, Louie alone could not withdraw money from the account. They further claim that First Federal knew the account was a trust account with co-trustees, and, therefore, that it is liable to the Brookses for Louie's improper withdrawals. First Federal claims that the account in dispute was not a trust account, but was merely a joint account with beneficiaries. Therefore, First Federal argues, Louie could withdraw money from the account without Pearl's knowledge or authorization.
"Since the suit was filed, Pearl has become mentally incompetent as a result of chronic brain syndrome, according to the record. Mildred Vickers and Helen Jean Rhodes were added to the complaint as Pearl's next friends. They also remained in the action individually. The case was tried before a jury, which returned a verdict in favor of First Federal. From the judgment based on that verdict, the Brookses appealed....
"The record shows that Pearl, now 89 years old, opened a savings account with First Federal in 1953, the year after she and Louie married. She added her daughters to the account later, and in February 1982, Louie's name was added to the account. On January 3, 1992, Pearl and Louie once again had the savings account changed. The preprinted document used to establish the new account was entitled, `One Trustee Discretionary Revocable Trust Account for Two or More Beneficiaries,' and the language in the form purports to create a trust account. The trustees of the account were listed as Mr. Louie H. Brooks or Mrs. Alder Pearl Brooks. Pearl's daughters, Helen Jean Rhodes and Mildred Vickers, were listed as the beneficiaries of the account. Language was added to the preprinted trust account form stating that the money in the trust account was `to be divided equally at death of both trustees.'

*642 "In March 1992, Louie Brooks and his son, Billy, opened an account in their names, and transferred money from Pearl and Louie's account into this new account. The record shows that over the next six months, Louie transferred all the money from the account at issue, more than $51,000, into the new account. In September 1992, Louie made one last transfer and then closed the account at issue. Louie died on October 1, 1992. Later that month, the Brookses went to First Federal and inquired about the account at issue and were told that that account had been closed."
679 So.2d at 1149.
During the first trial, First Federal called several witnesses who gave parol evidence regarding the intent of the parties who entered into the alleged trust agreement. Brooks I, 679 So.2d at 1149-50. Apparently, First Federal used these witnesses to try to prove that Pearl Brooks and Louie Brooks did not enter into a trust agreement, but merely opened a joint account, from which Louie Brooks could withdraw the funds at any time. The Court of Civil Appeals held the admission of this parol evidence to be reversible error because, that court held, the instrument completely and unambiguously created a trust. Id. The Court of Civil Appeals reversed the judgment. First Federal petitioned for certiorari review; however, this Court denied its petition. Id. at 1148.
On remand, the Brookses filed two motions in limine. In their first motion, they asked the court to exclude expert testimony that First Federal sought to introduce at the new trial. Their motion in limine addressed the following issues: (1) whether the expert could testify that the instrument was patently ambiguous as to the terms that would govern the administration of the trust; (2) whether the expert could testify that Alder Pearl Brooks and Louie Brooks were co grantors or co-settlors of the trust; (3) whether the expert could testify that the terms of the trust specifically allowed either grantor, Mr. or Mrs. Brooks, to withdraw money from the trust; (4) whether the expert could testify that the word "or" in the phrase "Mr. Louie H. Brooks or Mrs. Alder Pearl Brooks, Trustees," which phrase appears on the line provided for the trustee's name, means that either Mr. Brooks or Mrs. Brooks could withdraw the trust funds without the consent of the other; and (5) whether the expert could testify that when First Federal allowed Mr. Brooks to withdraw funds from the trust, First Federal did not act in bad faithbad faith being a requirement the Brookses must prove to hold the bank liable under §§ 19-1-9 and -10, Ala.Code 1975.
In their second motion, the Brookses asked the trial court to rule that the following are questions of law: (1) whether one grantor can withdraw funds from the subject trust without the consent of the other; (2) whether one trustee can withdraw funds from the subject trust without the consent of the other trustee; and (3) whether §§ 19-1-9 and -10, Ala.Code 1975, apply to this case. In that motion, the Brookses also argued that because these issues are questions of law, First Federal's proposed expert testimony is not appropriate.
The trial court issued an order on both motions that provides, in pertinent part:
"The Court is of the opinion and rules as follows:
"1. It is a question of fact for determination by the jury as to whether one grantor can withdraw funds from the subject trust account.
"2. It is a question of fact for determination by the jury as to whether one trustee can withdraw funds from the subject trust account.
"3. It is the opinion of the Court that Sections 19-1-9 and 19-1-10 of the Code of Alabama are applicable to the issues in this case.
"4. The Court is of the opinion that as to matters of fact, expert testimony as to the above issues is appropriate for the instruction of the jury, and will be allowed by this Court based on the above rulings."
The Brookses requested permission to appeal from this interlocutory order, pursuant to Rule 5, Ala. R.App. P. The trial judge stated that his interlocutory order involved "a controlling question of law as to which there is substantial ground for differences of opinion *643 and that an immediate appeal from this order would materially advance the ultimate determination of the litigation and the appeal would avoid protracted and expensive litigation." See Rule 5(a). We granted the Brookses permission to appeal.

I. Questions of Law or Fact
We begin with the trial court's holding in parts one and two of its order: that the jury must resolve questions of fact in determining whether Mr. Brooks, as grantor, could withdraw funds from the trust account without the consent of the other grantor, Mrs. Brooks; and whether Mr. Brooks, as trustee, could withdraw funds from the trust account without the consent of the other trustee, Mrs. Brooks. The Brookses argue that both of these questions are questions of law for the trial court because the Court of Civil Appeals has already held, in Brooks I, that the trust instrument is complete and unambiguous. We agree.
The rule of law governing the construction of contracts is that "[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court...." McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala.1991). In Brooks I, the Court of Civil Appeals held that the terms of the trust instrument are complete and unambiguous, and this Court denied review. 679 So.2d at 1148, 1150. Therefore, under the doctrine of the law of the case, the meaning of the trust instrument and whether Mr. Brooks alone could withdraw funds from the trust account are questions of law for the trial court; thus, the trial court erred in holding that these are questions of fact. See Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989) ("It is well established that on remand the issues decided by an appellate court become the `law of the case,' and that the trial court must comply with the appellate court's mandate.").
Because no fact issue exists as to parts one and two of the trial court's order and the issues are questions of law for the trial court, expert testimony is not appropriate. Therefore, we find it unnecessary to reach part four of the trial court's order, dealing with the admissibility of expert testimony to resolve perceived questions of fact stated in parts one and two.

II. The Applicability of §§ 19-1-9 and -10, Ala.Code 1975
We now turn to part three of the trial court's order, dealing with the law governing First Federal's alleged wrongdoing in connection with Mr. Brooks's transfers from the trust account.[1] The Brookses argue that §§ 19-1-9 and -10, Ala.Code 1975, do not apply to their complaint. Sections 19-1-9 and -10 are part of the Uniform Fiduciaries Act ("the U.F.A."), which our legislature adopted in 1943. The U.F.A. deals with cases, like the present case, in which "a beneficiary tries to impose liability upon a bank for a fiduciary's malfeasance" and it "generally imposes upon the beneficiary the risk of fiduciary misappropriation of checks or funds belonging to the beneficiary" unless the bank had actual knowledge of the fiduciary's wrongdoing or had knowledge of such facts that its action amounts to bad faith. Marion W. Benfield, Jr. & Peter A. Alces, Bank Liability for Fiduciary Fraud, 42 Ala. L.Rev. 475, 488, 492 (1991). The U.F.A. insulates banks that deal with wrongdoing fiduciaries from liability unless the beneficiary can show that the bank had actual knowledge of the wrongdoing or had knowledge of such facts that prove bad faith on the part of the bank. §§ 19-1-1 to -13.
First, the Brookses maintain that the Uniform Commercial Code ("the U.C.C."), as codified in Title 7, Ala.Code 1975, imposes obligations upon First Federal beyond the actual-knowledge and bad-faith standards imposed under the U.F.A. Specifically, the Brookses contend that § 7-4-401, Ala.Code 1975, applies in this case. However, that section deals with the question of when an "item" is properly payable from a customer's account. "`Item' means an instrument or a promise or order to pay money handled by a bank for collection or payment. The term *644 does not include a payment order governed by Article 4A or a credit or debit card slip." § 7-4-104(9), Ala.Code 1975. "Article 4A governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer." § 7-4A-102, Ala.Code 1975, official comment.
Mr. Brooks made three transfers from the trust account. The first transfer was a written "Intra-Bank Transfer," in which Mr. Brooks ordered First Federal to transfer $31,121.50 from the trust account to the savings account he shared with his son. First Federal completed this transfer electronically. Thus, Article 4A governs the first transaction, and § 7-4-401 is inapplicable.
In the second and third transfers, Mr. Brooks used nonnegotiable cash withdrawal slips to withdraw trust-account funds in the amounts of $5,000 and $15,838.17, respectively. He then deposited this cash into the savings account he shared with his son. Because these withdrawals, unlike the first transfer, are not transfers under Article 4A, § 7-4-401 could apply if these withdrawals were done either by an "instrument or a promise or order to pay money handled by a bank for collection or payment." § 7-4-104(9).
The word "instrument," as defined in the U.C.C. as adopted by our legislature, "means a negotiable instrument." § 7-3-104(b).
"[A `negotiable instrument' is] an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
"(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
"(2) Is payable on demand or at a definite time; and
"(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."
§ 7-3-104(a). The purported instrument must also be in writing. See §§ 7-3-103(a)(9) and (a)(6), Ala.Code 1975 (stating that a "promise" and an "order" must be "a written undertaking" or "a written instruction," respectively).
Also, the U.C.C. defines an "order" as follows:
"`Order' means a written instruction to pay money signed by the person giving the instruction. The instruction may be addressed to any person, including the person giving the instruction, or to one or more persons jointly or in the alternative but not in succession. An authorization to pay is not an order unless the person authorized to pay is also instructed to pay."
§ 7-3-103(6). "`Promise' means a written undertaking to pay money signed by the person undertaking to pay. An acknowledgment of an obligation by the obligor is not a promise unless the obligor also undertakes to pay the obligation." § 7-3-103(9).
These withdrawal slips are not "instruments," because they state that they are nonnegotiable. Section 7-4-401 also applies to a promise or order to pay money. However, neither of the withdrawal slips that effectuated these two transfers is a "promise" because neither contains "a written undertaking." Also, neither slip is an "order" because neither is "a written instruction" to pay money. Thus, § 7-4-401 does not apply to any of these transfers from the trust account.
Furthermore, § 7-3-307, entitled "Notice of breach of fiduciary duty," does not apply. The legislature added this section of the U.C.C. in 1995 when it revised Article 3 by repealing all the sections thereof and replacing them with new sections. Former §§ 7-3-304(2) and 7-3-304(4)(e) related to this issue but were unclear. Section 7-3-307 "states rules for determining when a person who has taken an instrument from a *645 fiduciary has notice of a breach of fiduciary duty that occurs as a result of the transaction with the fiduciary." § 7-3-307, Ala.Code 1975, official comment. Therefore, § 7-3-307 applies only when a person takes an instrument. As stated above, none of these transfers involved an instrument. Accordingly, § 7-3-307 does not apply.
We must also address the Brookses' argument that §§ 19-1-9 and -10 do not apply to their claims. First, we hold that § 19-1-10 is not applicable to the Brookses' claims, because it deals with deposits made by check, and it is undisputed that none of the deposits in this case were made by check. Second, we hold that § 19-1-9 is not applicable to the Brookses' claims. Section 19-1-9 addresses a bank's liability for the act of accepting a deposit into a fiduciary's personal account when the fiduciary is not entitled to make such a deposit and for the act of allowing a fiduciary to misuse trust funds deposited in the fiduciary's personal account. See Heffner v. Cahaba Bank & Trust Co., 523 So.2d 113 (Ala.1988). The Brookses complain that First Federal improperly allowed Mr. Brooks to withdraw funds from the trust account. They do not allege that First Federal is liable either for allowing Mr. Brooks to deposit trust funds into his personal account or for allowing him to misuse the trust funds deposited into his personal account. Thus, First Federal's allegedly wrongful acts are not within the purview of § 19-1-9.[2]

Conclusion
The trial court erred when it held that the meaning of the trust instrument is a question of fact for the jury and that First Federal's expert could testify as to the meaning of that instrument. Also, the trial court erred in holding that §§ 19-1-9 and -10, Ala.Code 1975, apply to the Brookses' claims. Accordingly, the trial court's order denying the Brookses' motion in limine is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES, KENNEDY, and COOK, JJ., concur.
ALMON, J., concurs in the result.
HOOPER, C.J., and SEE, J., concur in part and dissent in part.
SEE, Justice (concurring in part and dissenting in part).
I concur with those portions of the main opinion that hold that the meaning of the trust instrument is a question of law; that whether Mr. Brooks alone could withdraw funds from the trust account is a question of law; that the testimony of First Federal's expert as to the meaning of the trust instrument was inadmissible; and that Ala.Code 1975, § 19-1-10, does not apply to shield First Federal from the Brookses' claims. I respectfully dissent, however, from that portion of the main opinion that holds that First Federal's allegedly wrongful acts are not within the purview of Ala.Code 1975, § 19-1-9.
Section 19-1-9 reads as follows:

"If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit [to his personal credit] of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such *646 check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."
(Emphasis added.) Thus, there are two requirements for a bank to have immunity under § 19-1-9: (1) that the fiduciary, or agent, deposit money held as a fiduciary, or as an agent, into his personal account; and (2) that such deposits be made by "check" or "otherwise." The main opinion does not dispute that the second requirement of § 19-1-9that such deposits be made by "check" or "otherwise"expressly covers Mr. Brooks's noncheck deposits of trust account funds into his personal account. However, the main opinion concludes that the first requirement of § 19-1-9that the fiduciary or agent deposit trust money into his personal account is not implicated in this case because the Brookses "do not allege that First Federal is liable either for allowing Mr. Brooks to deposit trust funds into his personal account or for allowing him to misuse the trust funds deposited into his personal account." 726 So.2d at 645. I disagree.
In general, § 19-1-3 protects a bank that innocently allows a trustee to withdraw money from a trust account,[3] and § 19-1-9 protects a bank that innocently accepts deposits of trust funds into a trustee's personal account. Thus, when two different banks are involved, the Uniform Fiduciaries Act would protect each bank as follows: Section 19-1-3 would apply exclusively to "Bank A" that holds the trust account from which the moneys are withdrawn, and § 19-1-9 would apply exclusively to "Bank B" that holds the trustee's personal account into which the trust funds are deposited.[4] I cannot conclude that the Uniform Fiduciaries Act would provide less protection where the withdrawal and deposit are made at a single bank. Further, I cannot conclude that the transfers from the trust account to Mr. Brooks's personal account at the same bank can be artificially separated by the plaintiff into withdrawal and deposit components in order to exclude the application of either § 19-1-3 (relating to withdrawals) or § 19-1-9 (relating to deposits). Instead, where the same bank holds both the trust account and the trustee's personal account, as in this case, §§ 19-1-3 and 19-1-9 should be read together.
The overlapping operation of §§ 19-1-3 and 19-1-9 is clearly illustrated in Rheinberger v. First National Bank of St. Paul, 276 Minn. 194, 150 N.W.2d 37 (1967), in which a trustee wrongfully withdrew funds from a trust account in a bank and deposited those funds into his personal account at that same bank through an intrabank transfer. The Supreme Court of Minnesota held that the bank was not liable to the beneficiary under Minn. St. § 520.09, which is the equivalent of Alabama's § 19-1-9. 276 Minn. at 198, 150 N.W.2d at 40 ("In our opinion the transfer of funds by debiting the old account and crediting the new account falls within the scope of [§ 520.09]."). The court noted that the bank was also shielded from liability by Minnesota's equivalent of § 19-1-3. Id. at 201, 150 N.W.2d at 42 ("Nor was [the bank] under any duty after the transfer was completed to insure that the [trustee] did not misuse these funds. Minn. St. 520.02.").
Although only § 19-1-9 has been directly raised in this appeal, I would interpret § 19-1-9 as being in pari materia with § 19-1-3 in this intrabank-transfer case. The application of § 19-1-9 to intrabank transfers appears particularly appropriate when the basis of the plaintiff's claim is conversion of trust *647 property. When a single transfer both takes money from the trust account and places it in the trustee's personal account, it effects a conversion that is complete only upon the deposit into the personal account. Thus, § 19-1-9 is directly implicated even where the plaintiff casts his complaint so as to artificially separate the withdrawal component of the intrabank transfer from the deposit component of that same transfer. In short, exclusive application of § 19-1-3 to intrabank transfers ignores the reality of the conversion transaction, the text of § 19-1-9, and the purpose of the Uniform Fiduciaries Act.
HOOPER, C.J., concurs.
NOTES
[1] Of course, if the trial court rules as a matter of law that Mr. Brooks was legally entitled to make the transfers, then it would be unnecessary to deal with the issue of wrongdoing on the part of First Federal.
[2] Of course, this conclusion does not mean that all sections of the Uniform Fiduciaries Act do not apply. For example, § 19-1-3, Ala.Code 1975, may apply to the present case; however, the application of that statute is not properly before us.
[3] Section 19-1-3 states:

"A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary."
[4] For example, in Heffner v. Cahaba Bank & Trust Co., 523 So.2d 113 (Ala.1988), an executrix deposited estate funds into her personal account at a bank. The funds came from a draft payable by a life insurance company, not from an estate account at the same bank into which the deposit was made. Thus, this Court properly analyzed the potential liability of the bank for withdrawals from that account under Ala.Code 1975, § 19-1-9. Unlike the deposits in Heffner, however, the moneys deposited in Mr. Brooks's personal account came from a fiduciary account held at the same bank.